IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDWARD J. WHELAN,                        )
                                         )
                Plaintiff,               )
                                         )
        vs.                              )  CA No. 01-1316
                                         )
TELEDYNE METALWORKING PRODUCTS and       )
ALLEGHENY TECHNOLOGIES, INC.,            )
                                         )
                Defendants.              )

**MEMORANDUM**

Pending before the Court are Plaintiff's Renewed Motion for

Judgment as a Matter of Law Pursuant to Federal Rule of Civil

Procedure 50(b), Docket No. 171 ("Plf.'s Rule 50 Mot."), and

Plaintiff's Motion for a New Trial Pursuant to Federal Rule of

Civil Procedure 59, Docket No. 172 ("Plf.'s Rule 59 Mot.")  For

the reasons discussed below, both Motions are denied.

**I.   INTRODUCTION**

    A.   Factual Background

        The facts of this case are well known to the parties

and will not be reiterated in detail here.  Briefly stated,

Plaintiff Edward J. Whelan began working for a predecessor of

Defendant Metalworking Products ("Metalworking") in 1965.   In

1990, he was diagnosed with a progressively degenerative eye

condition which leads to the loss of central vision.  Despite

1

this restriction, he continued to work as an outside salesman for several years. As Mr. Whelan's vision deteriorated, he was no longer able to perform his assigned work and was transferred to the position of Marketing Coordinator which allowed him to work from his home in Pittsburgh, Pennsylvania, using a computer equipped with special adaptive vision software.

In 1998, Metalworking began consolidating its facilities in Grant, Alabama. On March 25, 1999, Mr. Whelan was told his position would be transferred to Grant. Through his attorney, Natalie Ruschell, Mr. Whelan advised Metalworking that for medical and family reasons, he was unwilling to relocate to Alabama, and asked that he be allowed to continue to work from his home in Pittsburgh. After more than a year of sporadic communication between Plaintiff and Defendant, Mr. Whelan was told his employment would be terminated if he did not, by April 14, 2000, indicate that he would be willing to relocate to Grant, "and if so, whether he [would] be able to perform the duties of Marketing Coordinator with or without accommodation." After receiving another letter from Ms. Ruschell which did not respond to these questions, Metalworking terminated his employment.

B.   Procedural Background

Mr. Whelan subsequently filed a timely charge of discrimination with the Equal Employment Opportunity Commission, claiming that Metalworking had discriminated against him in

2

Case 2:01-cv-01316-WLS Document 174 Filed 01/06/06 Page 3 of 26

violation of the Americans with Disabilities Act, 42 U.S.C. § §

12101 *et seq.* ("ADA"), and of the Pennsylvania Human Relations

Act ("PHRA"), 43 Pa. C.S. § 955.[1] He then filed suit in this

Court on July 16, 2001.

Mr. Whelan's Complaint stated three causes of action in

violation of the ADA: (1) failure to provide a reasonable

accommodation; (2) wrongful termination; and (3) failure to

participate in good faith in the ADA "interactive process" to

identify a reasonable accommodation. Following a lengthy period

of discovery, the Court concluded in response to the parties'

motions for summary judgment that material issues of fact existed

which should be tried to a jury. (*See* Memorandum Order dated

September 14, 2005, Docket No. 135, "Sum. Judg. Memo.")

The case went to trial on October 11, 2005. At the close of

the evidence, Plaintiff moved for a verdict in his favor as a

matter of law, pursuant to Federal Rule of Civil Procedure 50;

the motion was denied without prejudice. All three issues raised

in Mr. Whelan's complaint then went to the jury. The jurors

returned a verdict finding that although Mr. Whelan was "a

qualified individual with a disability" as that term is

understood under the ADA and was able to perform his duties as

Marketing Coordinator, Metalworking had not violated the ADA by

---

[1] The PHRA claim was dismissed on the basis that Plaintiff had
failed to file a timely charge of discrimination. (Sum. Judg. Memo.
at 24-25.)

3

failing to reasonably accommodate his disability, by terminating
his employment because of his disability, or by failing to
participate in good faith in the ADA interactive process. (*See*
Jury Verdict, Docket No. 168.)

On November 3, 2005, Mr. Whelan timely filed the now pending
motions. Defendant responded with a single brief in opposition
to both motions. (Defendant's Brief in Opposition to Plaintiff's
Motions for Judgment as a Matter of Law and for a New Trial,
Docket No. 173, "Def.'s Brief.")

## II. PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. Standard for Granting the Motion

The relevant portion of Federal Rule of Civil Procedure

50 provides:

> If, for any reason, the court does not grant a motion
> for judgment as a matter of law made at the close of
> all the evidence, the court is considered to have
> submitted the action to the jury subject to the court's
> later deciding the legal questions raised by the
> motion. The movant may renew its request for judgment
> as a matter of law by filing a motion no later than 10
> days after entry of judgment -- and may alternatively
> request a new trial or join a motion for a new trial
> under Rule 59. In ruling on a renewed motion, the court
> may:  (1) if a verdict was returned: (A) allow the
> judgment to stand, (B) order a new trial, or (C) direct
> entry of judgment as a matter of law.

Fed.R.Civ.P. 50(b). Renewing Motion for Judgment After Trial;
Alternative Motion for New Trial.

Entry of judgment as a matter of law under Rule 50(b) should
only be granted if "the record is critically deficient of that
minimum quantity of evidence from which a jury might reasonably

4

afford relief" in favor of the non-moving party. <u>Trabal v. Wells
Fargo Armored Serv. Corp.</u>, 269 F.3d 243, 249 (3d Cir. 2001),
*quoting* <u>Powell v. J.T. Posey Co.</u>, 766 F.2d 131, 133-134 (3d Cir.
1985). The court considering such a motion "should review all
the evidence in the record," but "may not make credibility
determinations or weigh the evidence." <u>Reeves v. Sanderson
Plumbing Prods.</u>, 530 U.S. 133, 150 (2000). As the Third Circuit
has recently directed,

> [a]lthough judgment as a matter of law should be
> granted sparingly, a scintilla of evidence will not
> enable the non-movant to survive a Rule 50 motion. . .
> . "The question is not whether there is literally no
> evidence supporting the party against whom the motion
> is directed but whether there is evidence upon which
> the jury could properly find a verdict for that party."

<u>Goodman v. Pennsylvania Turnpike Comm'n</u>, 293 F.3d 655, 665 (3d
Cir. 2002), *quoting* <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d
1153, 1166 (3d Cir. 1993); *see also* 9A Charles A. Wright & Arthur
R. Miller, Federal Practice and Procedure § 2524 (3d ed. 1995).

When assessing the sufficiency of the evidence, we are
required to give Metalworking, as verdict-winner and non-moving
party, "the benefit of all logical inferences that could be drawn
from the evidence presented, resolve all conflicts in the
evidence in [its] favor, and in general, view the record in the
light most favorable to [it]." <u>Williamson v. CONRAIL</u>, 926 F.2d
1344, 1348 (3d Cir.), *reh'g, en banc, denied*, 1991 U.S. App.
LEXIS 16758 (3d Cir.), *appeal dismissed w/o op.*, 947 F.2d 936 (3d
Cir. 1991). In sum, the only question before the court is whether
the record reflects "a minimum quantum of evidence from which a

5

jury might reasonably afford relief" in favor of the non-moving party. <u>Fireman's Fund Ins. Co. v. Vide Freeze Corp.</u>, 540 F.2d 1171, 1178 (3d Cir. 1976).

B.    <u>Analysis</u>

Plaintiff's position is that notwithstanding the jury's verdict, he is entitled as a matter of law to judgment against Defendant on all three causes of action stated in his Complaint. He argues that in light of "undisputed facts of record," the jury's verdict was not supported by sufficient evidence, even if Defendant is granted every fair and reasonable inference from that evidence. (Plaintiff's Brief in Support of His Renewed Motion for Judgment as a Matter of Law Pursuant to F.R.C.P. 50(b), attached to Docket No. 171, "Plf.'s Rule 50 Brief," at 2.)

Mr. Whelan sets out some 35 "undisputed facts and evidence of record," many of which, not surprisingly, are disputed by Metalworking. (*See*, respectively, Plf.'s Rule 50 Brief at 2-10 and Def.'s Brief at 3-25 and Appendix thereto.)   Plaintiff contends from these facts that "not only is there wholly insufficient evidence of record to support the jury's verdict, the legal conclusions implied by the jury's verdict are flatly contradicted by the . . . undisputed facts of record." (Plf.'s Rule 50 Brief at 4.)   In addition, he concludes that since (1) the undisputed facts establish the liability of Defendant under the ADA as a matter of law and (2) no reasonable jury could have

6

found that Metalworking did not violate the ADA, he should be granted judgment in his favor notwithstanding the jury's verdict. (Id. at 13-14.)

Plaintiff misconstrues the standard by which a motion for judgment as a matter of law is evaluated. The standard a court must apply in determining that the jury's verdict should be set aside is not whether the movant presented evidence at trial from which the jury could have found in his favor, but whether the non-movant presented sufficient evidence from which the jury reasonably arrived at a verdict in the non-movant's favor. Goodman, *supra*. Based on the evidence of record,[2] we agree with Defendant that a rational jury could have reached the decisions it did in favor of Metalworking. We turn, then, to a brief synopsis of the evidence presented at trial on each of Plaintiff's claims.

        1.    *Evidence to support a verdict in favor of Defendant on Plaintiff's claim that Defendant failed to provide a reasonable accommodation in connection with the transfer to Alabama.* Plaintiff has never, either in his arguments for and

_____

[2] Plaintiff's motions were filed on November 3, 2005.  The Court promptly ordered a response from Defendants which was filed on December 7, 2005.  Because Plaintiff implied that he intended to order a trial transcript which would allow him to amend the motions (Plf.'s Rule 50 Mot., ¶¶ 11-12; Plf.'s Rule 59 Mot., ¶¶ 13-14), the Court did not immediately consider the motions.  When Plaintiff failed to file a trial transcript or amendments by January 3, 2006 (two months after the motions were filed), we determined that the motions could be decided on the documentary evidence presented at the trial.

7

against summary judgment, or at trial, wavered from his position that his preferred – and only suggested – accommodation in connection with the transfer of his position as Marketing Coordinator was that he be allowed to work from his home in Pittsburgh.  His argument has consistently been that Defendant discriminated against him by refusing to continue this practice or offer other alternative accommodations.

We note first that with regard to this claim, the burden at trial was on Plaintiff to show, by a preponderance of the evidence, that (1) he proposed an accommodation; (2) that the proposed accommodation was reasonable, available and would have allowed him to perform the essential functions of the job; and (3) that Defendant unreasonably refused to provide that accommodation.  The jury was so instructed on this law.  (*See* Jury Instructions, undocketed, at 7-9.)

There would appear to be no question that Plaintiff proposed that he continue working from his home in Pittsburgh rather than transferring to Alabama, thus satisfying the first prong of the test.  (Plaintiff's Trial Exhibit(s), "Plf.'s Exhs." 4, 5 and 7.) However, Defendant presented evidence at trial from which the jury could have concluded that the proposed accommodation was either unreasonable or that it would not allow him to perform the essential functions of the job.  Although the jury found that Mr. Whelan was "qualified" to perform his work as Marketing

8

Coordinator, Defendant presented evidence from which the jury could have concluded that contrary to Mr. Whelan's position that working from home had been a reasonable accommodation in the past, doing so did not allow him to perform the essential functions of the job after the consolidation in Alabama and the job became more dependent on face-to-face communications. (See evidence cited in Def.'s Brief at 9-12.) Defendant also presented evidence that after the Marketing Coordinator job description was updated and sent to Plaintiff for comments - including questions about his ability to perform the listed functions, with or without accommodation - his attorney failed to respond in any substantive manner. (Plf.'s Exhs. 12 and 13.) From this evidence, the jury could have rationally concluded that given the circumstances at the time Mr. Whelan was asked to transfer to Alabama, the option of continuing to work from home in Pittsburgh was no longer effective nor reasonable. In sum, we find that the jury had sufficient evidence to support its ultimate decision that Defendant's refusal to provide the accommodation requested by Plaintiff was neither unreasonable nor a violation of the ADA.

2. *Evidence to support a verdict in favor of Defendant on Plaintiff's claim that his employment was terminated because of his disability.* As a threshold matter, we note that Plaintiff's argument is not actually that his employment was

9

terminated "because of" his disability, but rather that he was terminated because Defendant refused to accept his proposed accommodation and then terminated him when he refused to transfer to Alabama. (Plf.'s Rule 50 Brief, ¶ 7.)

In order to succeed on this claim at trial, Plaintiff was required to show that (1) he was qualified to perform his job; (2) that his disability was a motivating factor in Defendant's decision to terminate his employment; and (3) that Defendant's reason for his termination was a pretext. (Jury Instructions at 13-14.) As noted above, the jury did find that Mr. Whelan was qualified to perform the requirements of the Marketing Coordinator position, but apparently was not persuaded that his disability was a motivating factor for his termination and/or that Defendant's reason for his termination, i.e., his refusal to move to Alabama, was a pretext.

Defendant presented consistent testimony by three employees that Mr. Whelan was terminated because he never indicated any interest in moving to Alabama. (*See* evidence cited at Def.'s Brief at 7.) Metalworking relied in part on an exchange of letters showing that when the company wrote to Mr. Whelan on March 31, 2000, requiring a simple yes or no answer to the question of whether he would transfer (Plf.'s Exh. 12), his attorney did not answer directly but simply reiterated her opinion that allowing Plaintiff to continue working in Pittsburgh

10

was a reasonable accommodation (Plf.'s Exh. 13.)  Defendant also presented evidence that until the 1998 decision to consolidate its facilities in Alabama, it had accommodated Mr. Whelan's disability for approximately five years by allowing him to work from home and creating a position for him when he was no longer able to work as an outside salesman. (*See* evidence cited in Def.'s Brief at 21-23.)  As Defendant points out, the jury could reasonably conclude from this evidence that Metalworking did not harbor any discriminatory animus against Plaintiff because of his disability.  Fourth, Defendant presented evidence that showed when the company decided to consolidate its facilities, other employees in non-sales positions at Canadian and New England sites were given the same choice as Plaintiff – transfer to Alabama or resign.  (Id. at 23.)  Finally, Defendant offered evidence showing that it was more than a year after the consolidation was announced before Mr. Whelan was given an ultimatum about moving (id. at 23); from this, the jury could have concluded that Plaintiff's disability was not the reason for his termination since an employer motivated by a desire to rid itself of a disabled employee might attempt to do so more quickly.

From this evidence, we conclude a rational jury could have found that Defendant did not terminate Plaintiff's employment because of his disability, but rather because he refused to move

11

to Alabama.

3.   *Evidence to support a verdict in favor of Defendant on Plaintiff's claim that Defendant failed to participate in good faith in the interactive process to identify a reasonable accommodation.*   To establish that the employer did not participate in good faith in the interactive process, the burden is on the plaintiff to show that (1) the employer knew about his disability; (2) he requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist the plaintiff in identifying accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.   *(See Jury Instructions at 10-11.)*   Plaintiff contends that, as a matter of law, Metalworking discriminated against him by failing to satisfy the third and fourth prongs of the test.[3]   (Plf.'s

_____

[3]   Plaintiff also argues that the fact the Court gave a punitive damage jury instruction is additional evidence of the strength of his claims. He states, "[o]f course, punitive damage instructions are only given when there is not only record evidence of discrimination, but evidence to support a conclusion that the Defendant acted with malice or with reckless indifference to the federally-protected rights of Plaintiff."   (Plf.'s Rule 50 Brief at 13.)

We cannot agree that the jury instructions, in which the punitive damages instruction followed the instructions regarding compensatory and nominal damages, is "evidence of the strength" of Plaintiff's claims.   *(See Jury Instructions at 23-25.)*   Jury instructions are statements of the law and an explanation of how the law is to be applied to the facts discerned by the jury, not recapitulations of the evidence favoring one party or the other.   Furthermore, Mr. Whelan cites no authority for his conclusory statement that such instructions are *only* given when it has been determined before the case goes to the jury that the defendant acted with malice or reckless indifference to a plaintiff's federally protected rights.   Without further direction

12

Rule 50 Brief at 12-13.)

The parties stipulated as to Mr. Whelan's disability and it was clear he requested an accommodation to his disability. However, it was the task of the jury to weigh the evidence of actions taken by the parties and determine if those actions hindered or advanced the interactive process. There was evidence introduced that on at least two occasions, Defendant wrote to Plaintiff's attorney asking for more information about potential accommodations other than the one proposed by Plaintiff. (Plf.'s Exhs. 11 and 12.) Ms. Ruschell did not respond to the first letter (dated December 27, 1999) and in her reply to the second, she neither suggested an alternative accommodation⁴ nor responded factually to the inquiries. (Plf.'s Exh. 13.) There was further evidence that when Ms. Ruschell questioned whether medical support services were available in the Grant area, Metalworking responded with a list of suggested facilities, even though doing so was outside the scope of its responsibility as employer. (Plf.'s Exh. 11.) Both parties presented evidence that the other

---

from Plaintiff, we decline to speculate as to the basis for this argument.

⁴ We do not imply that Plaintiff was legally required to suggest other accommodations. We mention this only as evidence from which the jury could conclude that Plaintiff himself did not engage in good faith in the interactive process. The jury was instructed, pursuant to Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997), that "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." (See Jury Instructions at 10-12.)

never suggested a visit to Grant in order to investigate other
alternative accommodations there.

In denying summary judgment on this issue, the Court
referred to "the extensive lists of actions each party claims the
other did or did not take that negatively affected the
interactive process between March 25, 1999, and May 4, 2000."
(Sum. Judg. Memo. at 36.)  Much, if not all, of that evidence was
presented by the parties at trial.  The jury presumably weighed
this evidence and drew a reasonably based conclusion in favor of
Defendant therefrom, a decision the Court will not disturb.

C.   Conclusion

We conclude that based on the evidence offered at
trial, this is not a situation in which a reasonable jury could
only have decided in favor of Mr. Whelan.  Inasmuch as we find
that Defendant offered sufficient evidence from which a jury
could find in its favor on each of Plaintiff's three claims of
discrimination, we will not disturb the jury's findings and will
allow the judgment to stand.  Plaintiff's motion for judgment as
a matter of law is therefore denied.

**III. PLAINTIFF'S MOTION FOR A NEW TRIAL PURSUANT TO RULE 59**

A.   Standard for Granting the Motion

Federal Rule of Civil Procedure 59(a) provides:

A new trial may be granted to all or any of the parties
and on all or part of the issues in an action in which
there has been a trial by jury, for any of the reasons
for which new trials have heretofore been granted in

14

actions at law in the courts of the United States.
Fed.R.Civ.P. 59(a). New Trials; Amendment of Judgments. Grounds.

Among the most common reasons for granting a new trial are
(1) a jury verdict against the clear weight of the evidence,
requiring a new trial in order to prevent a miscarriage of
justice; (2) newly discovered evidence that would likely alter
the outcome of the trial; (3) improper actions by the court or
attorneys that unfairly influenced the jury's verdict; or (4) a
facially inconsistent jury verdict. Lifescan, Inc. v. Home
Diagnostics, Inc., 103 F. Supp.2d 345, 351 (D. Del. 2000); see
also 11 Charles A. Wright & Arthur R. Miller, Federal Practice
and Procedures, § 2805 (3d ed. 1995). Here, Plaintiff's motion
rests on the first and third reasons.

The decision to grant a new trial under Rule 59(a) is
"confided almost entirely" to the discretion of the court. See
Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980);
American Bearing Co. v. Litton Industries, Inc., 729 F.2d 943,
948 (3d Cir.), cert. denied, 469 U.S. 854 (1984). However, a
court may not grant a new trial merely because it would have
reached a different conclusion from that of the jury because to
do so would allow the court to supplant the jury's reasoning with
its own interpretation of the facts. See Olefins Trading, Inc.
v. Han Yang Chem. Corp., 9 F.3d 282, 290 (3d Cir. 1993). Where,
as here, "the subject matter of the litigation is simple and

15

within a layman's understanding, the district court is given less
freedom to scrutinize the jury's verdict than in a case that
deals with complex factual determinations." Williamson, 926 F.2d
at 1352.

The Third Circuit has repeatedly held that motions for a new
trial arguing that the verdict is against the weight of the
evidence "are proper only when the record shows that the jury's
verdict resulted in a miscarriage of justice or where the
verdict, on the record, cries out to be overturned or shocks our
conscience." Grazier v. City of Phila., 328 F.3d 120, 128 (3d
Cir. 2003), quoting Williamson, id. at 1353; see also Sheridan v.
E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996),
cert. denied, 521 U.S. 1129 (1997). This "stringent standard" is
established

> to ensure that a district court does not substitute its
> judgment of the facts and the credibility of the
> witnesses for that of the jury. Such an action effects
> a denigration of the jury system and to the extent that
> new trials are granted the judge takes over, if he does
> not usurp, the prime function of the jury as the trier
> of facts.

Sheridan, id. (internal quotation omitted).

In determining whether to grant a motion for a new trial
under Rule 59(a), a court is not compelled to view the evidence
in the light most favorable to the verdict winner, a distinction
from a similar motion under Rule 50. Bullen v. Chaffinch, 336 F.
Supp.2d 342, 347 (D. Del. 2004). "The burden of proof on a

16

motion for a new trial is on the movant." <u>Graves v. Women's Christian Alliance</u>, CA 01-CV-5077, 2003 U.S. Dist. LEXIS 12154, *4 (E.D. Pa. July 3, 2003).

B.   <u>Analysis</u>

Plaintiff argues that a new trial must be granted for any one of three reasons: first, the jury's verdicts were clearly against the great weight of evidence; second, the Court's Deputy Clerk made an improper remark to the jurors while they were deliberating which influenced them to reach a verdict in favor of Defendant without full deliberation; and third, the briefness of the jury's deliberations, coupled with the verdict clearly against the great weight of evidence, imposes an affirmative duty on the Court to set aside the verdict. (Plf.'s Rule 59 Mot., ¶¶ 2, 10 and 11.)  We address each of those arguments in turn.

1.   *The verdicts were against the weight of evidence:* In support of his argument that the verdict for Defendant was against the "clear and great weight of the evidence," Plaintiff reiterates the same facts and legal arguments made in his Brief in Support of the Rule 50 Motion.  (Plaintiff's Brief in Support of His Motion for a New Trial Filed Pursuant to F.R.C.P. 59, attached to Docket No. 172, "Plf.'s Rule 59 Brief," at 2-13.)

The standard for granting a new trial under Rule 59 when the moving party argues that the verdict is against the great weight of evidence, while stringent, is less demanding than the standard

17

applied when the motion for a new trial is brought under Rule 50.
Kennedy v. Lankenau Hosp. Jefferson Health Sys., CA 97-5631, 2000
U.S. Dist. LEXIS 13826, *7 (E.D. Pa. Sept. 12, 2000).  However,
even so, we find nothing in the jury's verdict that "cries out to
be overturned," or "shocks the conscience."  Although the verdict
maybe contrary to what Plaintiff anticipated, we do not find that
it resulted in manifest injustice and therefore it will be
allowed to stand.

           2.   *Whether a remark by the Deputy Clerk improperly*
*influenced the jury:*  Mr. Whelan's counsel has submitted an
affidavit in which he states that shortly after the jury began
deliberating on Friday, October 21, 2005, he was sitting outside
the courtroom.  (Affidavit of Noah Geary, Esq., attached to
Docket No. 172, "Geary Aff.," ¶¶ 4-5.)  At 4:15 p.m., the Deputy
Clerk informed him that a juror had stated he needed to leave the
deliberations to attend a family function.  The Clerk told
counsel that he would

       inform the jurors that if they did not reach a verdict
       by 4:30 p.m., [they] would be dismissed for the weekend
       and would have to return the following Monday morning
       to continue their deliberations.  Ten minutes later, at
       4:25 p.m., [the Clerk] informed me that the jury had
       reached a verdict.  The verdict was for the defense.

(Geary Aff., ¶¶ 7-9.)

       Mr. Whelan contends that this comment had the effect of
imposing a time limit in which the jury was required to reach a
verdict.  That is, the remark "affected and/or distracted the

                             18

jury's deliberations by improperly influencing them to reach a
verdict within the subsequent fifteen minutes so that they would
not have to return the following week." Plaintiff contends that
this communication alone is grounds for a new trial. (Plf.'s
Rule 59 Mot., ¶¶ 9-10, *citing* Haugh v. Jones & Laughlin Steel
Corp., 949 F.2d 914 (7th Cir. 1991).) Mr. Whelan offers no
further argument or analysis on this point. (*See* Plf.'s Rule 59
Brief at 14.)

     In Haugh, the jury foreman complained to the judge that a
marshal had told the jurors "that there was no such thing as a
hung jury and that they would be kept in custody for as long as
it took them to reach a verdict." Haugh, 949 F.2d 916. The
trial judge then held at hearing at which he questioned the
jurors and the marshal, who denied making that precise statement,
but admitted that when he was asked by a juror how long they
would have to stay in the courthouse if they could not reach a
verdict, he told them, "'You just have to keep deliberating.'"
Id. The judge found that the marshal had made the comment
attributed to him and that it might have influenced the jury's
deliberations. The appeals court went on to explain that a
marshal, whose official position "makes him likely to be
believed--commits a serious impropriety when he tells a jury that
it will be locked up till it renders its verdict, however long
that may take." Id. at 917.

Assuming for the purpose of analysis that the Clerk actually informed the jurors as Plaintiff's counsel states in his affidavit, i.e., "if they did not reach a verdict by 4:30 p.m., [they] would be dismissed for the weekend and would have to return the following Monday morning," that is an accurate statement of what would occur. The question is whether the cause-and-effect implication of not reaching a verdict by a specific time improperly influenced the jury to reach a hasty (and unreasonable) verdict instead of continuing to deliberate.

Unfortunately, because Counsel for Plaintiff did not report this exchange to the Court while the jury was still available,[5] we were unable to conduct even the limited inquiry into this matter which is permitted under Rule 606(b) of the Federal Rules of Civil Procedure. Under that rule, a court may not inquire into the validity of a verdict if doing so would require a juror to "testify as to any matter or statement occurring during the course of the jury's deliberations . . . except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or

---

[5] We question whether Counsel's failure to immediately report to the Court what is now being raised as grounds for a new trial resulted in a waiver of this argument. *See* <u>United States v. Dean</u>, 667 F.2d 729 (8th Cir. 1988) and cases cited therein; *see also* <u>United States v. Nance</u>, 502 F.2d 615, 621 (8th Cir. 1974), *cert. denied*, 420 U.S. 926 (1975) ("A party may not stand idly by, watching the proceedings and allowing the Court to commit error of which he subsequently complains.") We need not address this issue (also raised by Defendant in its Brief at 30-32) because we conclude even if the remark was made as stated, it did not result in any prejudice to Plaintiff.

whether any outside influence was improperly brought to bear upon any juror."[6]  While Rule 606(b) would have allowed the Court to inquire into the precise language used by the Deputy Clerk, we would not be able to probe the jurors' minds for the influence, if any, such a statement had on their deliberations.  Instead, once it was established that the Deputy Clerk advised the jury as stated by Plaintiff's counsel, we would undertake an "objective test," focusing on two factors: (1) "the nature" of the information or contact at issue, and (2) "its probable effect on a hypothetical average jury." United States v. Schwarz, 283 F.3d 76, 99 (2d Cir. 2002).  Although it would still be theoretically possible for the Court to hold an evidentiary hearing on this issue, we will bypass that option and assume for the sake of discussion that the remark was made as reported by Plaintiff's counsel.

Claims that an ex parte communication with a jury improperly influenced its decision generally fall into one of three

---

[6]  As stated by the court in the case cited by Plaintiff, "Rule 606(b). . ., far from giving a judge carte blanche in questioning a jury about its verdict, forbids him to inquire into the jurors' beliefs, opinions, discussions, grounds, etc., save as necessary to determine the existence and content of any unauthorized communication made to the jury.  The proper procedure therefore is for the judge to limit the questions asked the jurors to whether the communication was made and what it contained, and then, having determined that the communication took place and what exactly it said, to determine--without asking the jurors anything further and emphatically without asking them what role the communication played in their thoughts or discussion--whether there is a reasonable possibility that the communication altered their verdict." Haugh, 949 F.2d at 917.

21

categories: (1) the remark conveyed information to the jury that was not in the trial record; (2) the remark informed the jury how it should decide the case; or (3) it negatively affected the deliberative process. Manley v. AmBase Corp., 337 F.3d 237, 252 (2d Cir. 2003).

Based on the content of the Deputy Clerk's statement, we find it could be considered only in the third category. However, we discern nothing therein which could be interpreted as negatively affecting the jury's deliberations. The nature of the communication was to convey an administrative statement of fact, made by the person whose responsibility it was to convey such information to the jury. Truscott v. Chaplin, 403 F.2d 644, 645 (3d Cir. 1968) (administrative communications between judge and jury which "do not contain supplemental instructions relating to the case and are clearly incapable of prejudicing the rights of the parties" may occur in the absence of counsel.) As to the probable effect the statement had on a hypothetical average jury, we find the statement was neither coercive nor threatening, even if we accept Plaintiff's statement that the jury was told it would "have to" return the following Monday if it failed to reach a verdict before 4:30. Unlike the marshal in Haugh who told jurors that they would be "kept in custody" until they reached a verdict, the jurors here knew they were free to go at 4:30 p.m., as had been the general practice throughout the trial. The fact

22

that their deliberations would continue the following week if
they did not reach a verdict that day could hardly have come as a
surprise to them or be interpreted as coercive.

Moreover, without an inappropriate inquiry into the course
of the jury's deliberations, there is no way to know how close
the jurors were to a verdict at 4:15 p.m. when the statement was
made. As noted throughout this opinion, Defendant had presented
a great deal of evidence which could have allowed the jury to
decide in its favor without extensive debate. Secondly, the
issues presented were not complex or outside the realm of a
typical juror's everyday experiences. That is, unlike a patent
infringement or a securities fraud case where the facts and the
law are complicated, the questions here revolved around the issue
of whether Mr. Whelan had been discriminated against in a very
specific manner. While we do not presume to speculate about the
scope of the jurors' deliberations, it would not be unreasonable
to conclude that they found little difficulty in understanding
the law or applying the law to the facts, thereby eliminating the
need for prolonged discussion. Finally, the jurors are presumed
to have followed the Court's instructions about not surrendering
their "honest conviction as to the weight or effect of the
evidence . . . for the mere purpose of returning a verdict."
(See Jury Instructions at 35.)

We do not find that the Deputy Clerk's comment, viewed

23

objectively, unduly influenced the jury to reach a hasty decision
in favor of Defendant. We therefore do not find this argument a
justifiable basis for granting a new trial.

      3. *Whether the briefness of the jury deliberations,*
*coupled with a verdict against the great weight of evidence,*
*requires the Court to set aside the verdict*: Plaintiff states
without further argument or analysis that the Court "has an
affirmative duty to set aside the verdict" when brief
deliberations are coupled with a verdict clearly against the
great weight of the evidence. (Plf.'s Rule 59 Brief at 14.) We
have already concluded above that the verdict was not against the
great weight of evidence. As pointed out in the case cited by
Plaintiff, the briefness of deliberations alone is an
insufficient basis on which to grant a new trial. (Plf.'s Rule
59 Brief at 14, *citing* Kearns v. Keystone Shipping Co., 863 F.2d
177, 182 (1st Cir. 1988); *see also* Marx v. Hartford Accident &
Indemnity Co., 321 F.2d 70, 71 (5th Cir. 1963)("if the evidence
is sufficient to support the verdict, the length of time the jury
deliberates is immaterial."))

As calculated by Plaintiff, the jury here deliberated from
2:45 p.m. until 4:25 p.m., a total of 1 hour and 40 minutes.
(Geary Aff., ¶ ¶ 4 and 8.) As another court has held where the
plaintiff argued that he should be granted a new employment
discrimination trial in which the jury deliberated only twenty

minutes, "[a] jury is not required to deliberate for any set length of time. Brief deliberation, by itself, does not show that the jury failed to give full, conscientious or impartial consideration to the evidence." Wilburn v. Eastman Kodak Co., 180 F.3d 475, 476 (2d Cir. 1999). See also Paoletto v. Beech Aircraft Corp., 464 F.2d 976, 983 (3d Cir. 1972) (where jury deliberated only 40 minutes after a long and complex trial, the brevity of the deliberations standing alone did not substantiate a claim that the verdict was capricious); Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 166 F. Supp.2d 19, 41 (D. N.J. 2001) (court declined to grant a new trial on the basis of jury deliberations of only two hours after 17 days of complex scientific evidence when it concurrently decided that verdict was not contrary to the great weight of evidence); and Evans v. FRB, CA No. 03-4975, 2005 U.S. Dist. LEXIS 5714, *7, *9 (E.D. Pa. Apr. 4, 2005) (court refused to grant new trial where jury deliberated only slightly over an hour following five-day employment retaliation trial.)

Inasmuch as the verdicts rendered herein were not against the great weight of evidence, Plaintiff's argument that the jury deliberations were "too" brief, standing alone, is an insufficient basis on which to grant a new trial.

C.   Conclusion

The Court concludes that none of the three reasons

25

proffered by Plaintiff in his Rule 59(e) motion requires that he
be granted a new trial.  The motion is therefore denied.

     A separate Order follows.

                                          William L. Standish
                                          U.S. District Judge

January _____6_____, 2006


cc:  Noah Geary
     Washington Trust Building
     Suite 225
     Washington, PA 15301
     Email: ngeary@geaerylawoffices.net

     Angelica R. Shepard
     Kirkpatrick & Lockhart Nicholson Graham
     535 Smithfield Street
     Henry W. Oliver Building
     Pittsburgh, PA 15222-2312

     Michael A. Pavlick
     Kirkpatrick & Lockhart Nicholson Graham
     535 Smithfield Street
     Henry W. Oliver Building
     Pittsburgh, PA 15222-2312
     Email: mpavlick@klng.com

26